**FIRST DIVISION
BARNES, P. J.,
GOBEIL and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 3, 2025**

# In the Court of Appeals of Georgia

A25A0935. CAMBRE & ASSOCIATES, LLC et al. v. LAZENBY et al.

GOBEIL, Judge.

Personal injury lawyer R. Shane Lazenby filed a proposed class action suit against an Atlanta law firm, Cambre & Associates, LLC, and three individual defendants (collectively referred to as the "Defendants") on behalf of himself and other Georgia plaintiffs' lawyers. Lazenby's complaint alleges that the Defendants are directly soliciting personal injury victims in violation of Georgia law and professional rules of conduct — i.e., that the Defendants are "literally ambulance chasing" — and thereby are acquiring an unfair competitive advantage over "honest" personal injury lawyers. In this interlocutory appeal, the Defendants challenge the trial court's denial of their motion to dismiss the complaint under OCGA § 9-11-12 (b) (6) for failure to state a cognizable legal claim. For the reasons explained more fully below, we reverse.

This Court reviews de novo a trial court's ruling on a motion to dismiss for failure to state a claim, "construing the pleadings in the light most favorable to the

plaintiff and with any doubts resolved in the plaintiff's favor," *Babalola v. HSBC Bank, USA, N.A.*, 324 Ga. App. 750, 750 (751 SE2d 545) (2013) (citation and punctuation omitted), and viewing all well-pled allegations in the complaint as true, *Carter v. Cornwell*, 338 Ga. App. 662, 662 (791 SE2d 447) (2016).

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Hendon Props., LLC v. Cinema Dev., LLC*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) (citation and punctuation omitted). "Nevertheless, where the face of the complaint demonstrates that the plaintiff can prove no set of facts to support an essential element of a claim, dismissal of that claim is appropriate. Even when a complaint is liberally construed, there still must be some legal basis for recovery." *Lord v. Lowe*, 318 Ga. App. 222, 223 (741 SE2d 155) (2012) (citations and punctuation omitted).

The complaint names four defendants: the law firm of Cambre & Associates, LLC; its founding partner, Glenn Cambre; its managing partner, Hannah Moore; and a paralegal, Erwin Minley, who serves as a "runner" for the firm. According to the complaint, the Defendants are engaged in a scheme to illegally obtain information

about automobile accident victims before that information becomes publicly available; they then send "runners" to contact the victims in person or over the telephone to solicit them as legal clients using high-pressure and coercive tactics. The complaint lists one specific example of the Defendants' "illegal and wrongful solicitation." In this instance, Minley allegedly made an unsolicited call to a particular accident victim's private cell phone the morning after an accident and pressured him to engage Cambre & Associates to represent him. When the victim hesitated, the firm sent another runner to his residence with a fee contract in hand and asked the victim to sign the contract immediately.

The complaint alleges that the Defendants' direct solicitation scheme violates multiple laws and professional rules, including (1) Georgia Bar Rule 7.3 (d), which forbids lawyers from engaging in unsolicited "direct personal contact or . . . live telephone contact" with potential clients; (2) OCGA § 33-24-53, which criminalizes the solicitation of information related to motor vehicle collisions for personal financial gain; and (3) OCGA § 15-19-55, which bars non-lawyers from engaging in direct solicitation of legal business on behalf of lawyers. Lazenby claims that the Defendants' violation of these laws and rules gives them an unfair advantage in the personal injury marketplace and deprives Lazenby and other ethical plaintiffs' lawyers of the opportunity to compete fairly for business, and he seeks class certification on their behalf.

The complaint asserts two causes of action. In Count 1, it alleges that the Defendants infringed Lazenby's "right to do business and compete honestly" by violating the above criminal laws and professional rules prohibiting direct solicitation.

In Count 2, the complaint alleges that the Defendants violated Georgia's Racketeering Influenced and Corrupt Organizations ("RICO") Act, OCGA § 16-14-4, by "repeated access of personal data through the use of computers and computer networks without authorization" in violation of OCGA § 16-9-93 (c), Georgia's criminal "invasion of privacy" statute, which prohibits the use of a computer network to obtain a person's private information "without authority."[1]

The Defendants moved to dismiss the complaint for failure to state a claim, alleging that Georgia law does not recognize any claim for violation of a "right to do business"; that there is no private right of action to enforce the criminal laws and professional rules listed in the complaint; and the complaint fails to allege all the necessary elements of a RICO violation. The trial court summarily denied the motion, but certified its order for immediate review. We granted the Defendants' application for interlocutory review,[2] and this appeal followed.

---

[1] Lazenby filed an amended complaint in which he asserted a claim under Georgia's Fair Business Practices Act. He filed a second amended complaint dropping and dismissing that claim.

[2] The Defendants first filed an incomplete application for interlocutory appeal that failed to include the trial court's order, and we dismissed that application. See Case No. A25I0056 (Oct. 22, 2024). The trial court then re-entered its dismissal order, and the Defendants filed a second application, which we granted. See Case No. A25I0088 (Dec. 9, 2024).

1. We begin with the Defendants' argument that Lazenby has no standing to complain about their alleged violation of Georgia's criminal laws or professional rules.[3] Indeed, our Supreme Court has held that "while the Code of Professional Responsibility provides specific sanctions for the professional misconduct of the attorneys whom it regulates, it does not establish civil liability of attorneys for their professional misconduct, nor does it create remedies in consequence thereof." *Davis v. Findley*, 262 Ga. 612, 613 (422 SE2d 859) (1992). Likewise, violation of a criminal statute does not give rise to a civil right of action unless the statute specifically provides for such a right. See, e.g., *Anthony v. Am. Gen. Fin. Svcs.*, 287 Ga. 448, 455-456 (2) (a) (697 SE2d 166) (2010). None of the statutes that the Defendants allegedly violated explicitly provide for a private right of civil action.

Lazenby acknowledges this principle, but argues that he is not suing the Defendants for violating a criminal statute or ethical rule; instead, he seeks redress for tortious conduct that incidentally violates criminal statutes and ethical rules. According to Lazenby, Count 1 — which alleges a violation of his right to do honest

---

[3] The Defendants also argue that Lazenby failed to adequately plead a claim for unjust enrichment. Within Count 1 of his complaint, Lazenby alleged that the Defendants were liable to him for "unjust enrichment, for unlawfully soliciting and collecting fees to the detriment of Plaintiff R. Shane Lazenby and to the class members, who compete at a disadvantage while abiding by the Bar and Legislature's rules[.]" On appeal, Lazenby explains that his use of the phrase "unjust enrichment" in the complaint "is not a separate cause of action, but rather a listing of damages and measure of [Lazenby's] damages for the infringement on his enjoyment of his right to practice law." In light of Lazenby's acknowledgment that his complaint does not include a claim for unjust enrichment, we need not address this portion of the Defendants' argument on appeal.

business[4] — is better understood as a claim that the Defendants are infringing upon his property right to practice law. The Defendants, however, maintain that there is no property interest in the practice of law. They cite a line of cases holding that a layperson cannot practice law because "[t]he right to practice law is not a natural or constitutional right, nor an absolute right or a right de jure, but is a privilege or franchise." *Eckles v. Atlanta Tech. Group*, 267 Ga. 801, 805 (2) (485 SE2d 22) (1997) (citation and punctuation omitted). Ergo, the Defendants reason, they cannot be sued for infringing upon an interest that does not exist.

Lazenby counters that *Eckles* and similar cases merely hold that a *layperson* does not have an absolute right to practice law; but a licensed attorney has a property interest in the privilege or franchise he has expended his resources to acquire. Lazenby relies on *Studdard v. Evans*, 108 Ga. App. 819, 822 (2) (135 SE2d 60) (1964), a case in which a lawyer sued a third party for alleged interference with his contractual relationship with a client. We held that "[t]he right of the attorney to practice law is property and the attorney is said to have a 'property' in his fees and emoluments by the common law or by contract expressed or implied with his client." Id. at 822 (2). And in *Weiner v. Fulton County*, this Court held:

> The right to follow a profession, which of course includes the right to be
> compensated for services rendered, is a property right. Specifically, the

---

[4] We agree with the Defendants that Georgia law does not appear to recognize a cause of action for the violation of the right to do honest business, and "courts have no authority to grant recoveries or authorize actions unknown to the common law" because such matters are for the legislature. *Lumpkin v. Mellow Mushroom*, 256 Ga. App. 83, 85 (567 SE2d 728) (2002) (citation and punctuation omitted).

right to practice law has been held to be a property right within the meaning of the due process and equal protection provisions of the Fourteenth Amendment to the Constitution of the Unites States. From this it follows that an attorney from whom services are demanded and by whom they are given has a property right in his fee for those services, which may be set by contract, or, if not, should be based on their just and reasonable value.

113 Ga. App. 343, 345 (1) (148 SE2d 143) (1966) (citations omitted). However, the instant appeal does not involve interference with a specific contract, an attorney's right to fees, or an established attorney-client relationship. Nor does it implicate Lazenby's license to practice law.

Nonetheless, Lazenby argues that his claim is actionable pursuant to OCGA § 51-9-1, which provides: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." Construed in this manner, to support his claim that the Defendant's infringed upon his property right to practice law, Lazenby alleged in his complaint that he has "suffered financial losses from Defendants' illegal solicitation because every case that the Defendants have obtained by illegal means is a case and fee that went to Defendants and did not go to Plaintiff or those similarly situated to Plaintiff." What the complaint lacks, however, is any allegation that Lazenby — or other similarly situated attorneys — had an attorney-client relationship with any accident victim or performed legal services on their behalf.

7

Instead, Lazenby's property-infringement claim rests on the notion that clients would have retained Lazenby and other similarly situated attorneys were it not for the unethical and unlawful conduct of the Defendants. Although in reviewing a trial court's ruling on a motion to dismiss, we accept "as true all well-pleaded material allegations in the complaint and resolv[e] any doubts in favor of the plaintiff[,] . . . we are under no obligation to adopt a party's legal conclusions based on these facts." *Kearney v. Oppenheimer & Co.*, 375 Ga. App. 254, 259-260 (915 SE2d 709) (2025) (citations and punctuation omitted). We therefore are not required to adopt Lazenby's conclusion that the Defendants unlawfully infringed upon his — or similarly situated attorneys' — property right in the practice of law. Under the circumstances, we conclude that, within the framework of the complaint, Lazenby's inchoate expectation of being employed by accident victims who were contacted by the Defendants in the manner alleged, is insufficient as a matter of law to state a cause of action. The trial court therefore erred by denying the Defendants' motion to dismiss Count 1 of the complaint.

2. The Defendants also argue that the trial court erred by denying their motion to dismiss Lazenby's RICO claim. Specifically, they contend that Lazenby failed to allege a pattern of racketeering activity because he merely alleged a single statutory violation and did not plead facts sufficient to establish the element of proximate cause for a RICO claim.

OCGA § 16-14-4 (a) makes it unlawful for "any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly

or indirectly, any interest or control of any enterprise, real property, or personal property of any nature, including money."

> A "racketeering activity," also known as a "predicate act," is the commission of, the attempt to commit, or the solicitation or coercing of another to commit, a "crime which is chargeable by indictment" under one of forty categories of offenses. OCGA § 16-14-3 (9) (A) (i) - (xli). And a "pattern of racketeering activity" means that there have been at least two acts of racketeering activity that are interrelated and that were done "in furtherance of one or more incidents, schemes, or transactions." OCGA § 16-14-3 (8) (A). Additionally, it is unlawful to conspire to violate the substantive provisions of Georgia's RICO Act. OCGA § 16-14-4 (c). Under Georgia law, a person may be found liable for RICO conspiracy if [he or she] knowingly and willfully join[s] a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts.

*Wylie v. Denton*, 323 Ga. App. 161, 164-165 (1) (746 SE2d 689) (2013) (citation and punctuation omitted) (physical precedent only).

Pretermitting whether Lazenby adequately alleged a pattern of racketeering activity sufficient to withstand the Defendants' motion to dismiss, we turn to their claim that Lazenby failed to plead that the Defendants' alleged predicate acts proximately caused his losses.

To establish a valid civil RICO claim, a plaintiff must show, among other things, that the RICO violation proximately caused injury to the plaintiff. *Najarian Capital v. Clark*, 357 Ga. App. 685, 693 (4) (849 SE2d 262) (2020).

> To satisfy the proximate cause element of RICO, a plaintiff must show that [his] injury flowed directly from at least one of the predicate acts. This burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act.

Id. at 694 (4) (citation and punctuation omitted). Rather, the plaintiff must show "direct harm" from the defendant's commission of one of the specific crimes enumerated in the RICO statute. *Tribeca Homes v. Marathon Inv. Corp.*, 322 Ga. App. 596, 598 (1) (745 SE2d 806) (2013). Put another way, "to survive a motion to dismiss, a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that he or she was injured. The plaintiff must show, then, that his or her injury was the direct result of a predicate act *targeted* toward [him], such that [he] was the *intended victim*." *Kearney*, 375 Ga. App. at 261 (1) (citation, punctuation and footnotes omitted; emphasis in original). See also *Wommack v. G. S. Constr., Inc.*, Case No. A25A1145 (Oct. 31, 2015) (noting that relevant inquiry on motion to dismiss plaintiffs' RICO claim is whether plaintiffs could "possibly introduce evidence within the framework of the [ ] complaint that their injuries *flowed directly* from acts in violation of [relevant criminal statutes] which were *directed at them*") (emphasis supplied).

Here, the complaint alleges that the Defendants' violations of OCGA § 16-9-93 (c) ("computer invasion of privacy") harmed Lazenby in the form of "deprivation of profits and business opportunity for [Lazenby] and other class members[.]" But as the Defendants point out, the people directly harmed by these alleged violations via repeated access of personal data were the car accident victims whose information was illegally obtained. Lazenby maintains on appeal that he "and the proposed class of lawyers from whom [the Defendants] have stolen fees are indisputably the most direct victims of the criminal enterprise[.]"

However, the facts alleged in support of Lazenby's RICO claim are simply too attenuated and speculative to form the proximate cause of the supposed financial losses theoretically incurred by Lazenby and others similarly situated. See *Wylie*, 323 Ga. App. at 168 (1) (reversing trial court's denial of defendants' motion to dismiss RICO claims where plaintiffs sought to recover for injuries (loss of their jobs) that were the "indirect result of predicate acts directed at third parties"; lack of direct nexus between predicate acts and plaintiffs' injuries demonstrated that plaintiffs could not satisfy proximate cause element of civil RICO claim); *Nicholson v. Windham*, 257 Ga. App. 429, 430-431 (1) (571 SE2d 466) (2002) (affirming grant of motion to dismiss plaintiff's RICO claim because defendants alleged predicate acts — including theft, mail fraud, and obstruction — were not directed at her, and her injury (premature employment termination) was not a direct result of the racketeering activities). Accordingly, the trial court erred by denying the Defendants' motion to dismiss Count 2.

In sum, we reverse the trial court's denial of the Defendants' motion to dismiss.[5]

*Judgment reversed. Barnes, P. J., concurs and Watkins, J., concurs in judgment only to Division 1 and dissents to Division 2.*

---

[5] We express our gratitude for the amicus curiae brief filed by the Georgia Trial Lawyers Association, and we recognize the importance of deterring improper solicitation of prospective clients, both to practitioners and the public at large. Nevertheless, for the reasons explained above, the remedy for the types of criminal and/or professional misconduct — under the factual scenario presented in the complaint at issue here — lies with the General Assembly and the State Bar of Georgia. The fact that Lazenby's civil claims could, as the GTLA points out, be a "useful aid in [the] fight" against unethical solicitation tactics, does not authorize this Court to fashion a remedy where none exists under the current state of the law.

# In the Court of Appeals of Georgia

A25A0935. CAMBRE & ASSOCIATES, LLC et al v. R. SHANE
      LAZENBY et al.

WATKINS, Judge.

I concur in judgment only as to Division 1 because I do not agree with all that is said in that division of the majority's opinion. And for the reasons that follow, I respectfully dissent as to Division 2. In my view, the RICO claim is not subject to dismissal for lack of proximate cause at this very early stage of the proceedings.

"[T]he standard for granting a motion to dismiss is a demanding one. A complaint need only give fair notice of the claim, and a motion to dismiss should be granted only when the complaint shows with certainty that the plaintiff would not be

entitled to relief under any state of facts that could be proved in support of the claim. " *Norman v. Xytex Corp.*, 310 Ga. 127, 138 (2) (e) (848 SE2d 835) (2020) (citations and punctuation omitted). And we must bear in mind that questions regarding proximate cause are ordinarily left to the jury. See *Clarke v. Freeman*, 302 Ga. App. 831, 837 (2) (692 SE2d 80) (2010).

> The Georgia RICO Act was enacted by the Georgia legislature to impose criminal penalties against those engaged in an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic or physical threat or injury, and civil remedies to compensate those injured by reason of such acts. Under OCGA § 16-14-4 (a), "it shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." To establish a valid civil RICO claim, a plaintiff must show that the defendant violated or conspired to violate Georgia's RICO Act and that the RICO violation proximately caused injury to the plaintiff. (Citations and punctuation omitted.) *Overlook Gardens Properties, LLC v. Orix, USA, LP*, 366 Ga. App. 820, 834 (1) (c) (884 SE2d 433) (2023).

And, "[t]o satisfy the proximate cause element of RICO, a plaintiff must show that its injury *flowed directly* from at least one of the predicate acts. This burden is not met where a plaintiff shows merely that its injury was an eventual consequence of the

3

predicate act or that it would not have been injured but for the predicate act." Id. (emphasis supplied).

Here, the complaint alleges that Lazenby lost profits and business opportunities as a result of the defendants repeatedly accessing accident victims' private data, which access constitutes a violation of OCGA § 16-9-93 (c) and amounts to a pattern of racketeering activity within the meaning of the RICO Act. The majority concludes that this claim cannot survive the defendants' motion to dismiss because it was not Lazenby's private data that was accessed. And the majority's opinion relies on *Kearney*, 375 Ga. App. at 261 (1), for the principle that, to bring a viable RICO claim, a plaintiff must show that his or "injury was the direct result of a predicate act *targeted* toward [him], such that [he] was the *intended victim*."[1]

---

[1] I question whether this is a fully accurate summary of the law, rather than a convenient form of shorthand, as I am not aware of any case where the viability of the plaintiff's RICO claim turned on whether the predicate act was "targeted toward him," as a separate and distinct requirement from the well-established rule that his injury must "flow directly" from the predicate act.

*Kearney* pulled this principle — that a plaintiff must show that his or "her injury was the direct result of a predicate act *targeted* toward [him]" — from an opinion that was physical precedent only: *Wylie*, 323 Ga. App. at 166 (1). And although the *Kearney* court proclaimed that it was treating *Wylie* as binding precedent by virtue of *Wylie* having been treated favorably in other binding opinions, this requirement was not the principle for which those cases relied upon *Wylie*. More importantly, the *Kearney* court specifically held that the plaintiffs' RICO claims were not viable because they did not flow directly from the

To the extent the majority appears to conclude that the only targeted or intended victims of the defendants' conduct in this case are the accident victims whose personal data was accessed, I think their view is too narrow. Importantly, the RICO statute itself provides that "*[a]ny person* whose property or person is injured *by reason of* a violation of any provision of this article may sue therefor and recover for any damages sustained and the costs of suit." OCGA § 16-9-93 (g) (1) (emphasis supplied). And while our cases in this area make it clear that, at some point, a plaintiff's injury is simply too attenuated from the predicate act to be actionable, I am not convinced that the injury alleged in this case is so attenuated.

Again, the complaint alleges that the defendants accessed the private data of recent accident victims and that, as a direct and intended result of accessing that data,

---

predicate acts, 375 Ga. App. at 263-264 (1) (a), so the resolution of *Kearney* did not hinge on whether the plaintiffs met the *separate* requirement of being a "target" or "intended victim" of the predicate act. Similarly, although our Court recently quoted this language from *Kearney* in another panel decision, that case, too, did not hinge on the question of whether the plaintiff was a "target" and "intended victim" of the predicate act. See *Wommack v. G. S. Construction, Inc.*, Case No. A25A1145 (Oct. 31, 2025). "[B]ecause the language relied upon . . . was not necessary to resolve the issues before our Court in [*Kearney* or *Wommack*,]" I believe that, to the extent it creates an additional and separate requirement for proximate cause in a civil RICO case, it should be viewed as dicta rather than as binding precedent. *Coen v. Aptean, Inc.*, 346 Ga. App. 815, 822-823 (1) (816 SE2d 64) (2018), reversed in part on other grounds by 307 Ga. 826, 829-840 (4) (838 SE2d 860) (2020).

the defendants "scooped" the plaintiffs — i.e., that the defendants secured an attorney-client relationship with the accident victims before Lazenby could do so. It is true that the predicate act is accessing the private data of recent accident victims — not the private data of Lazenby. But it is equally true that the defendants' alleged purpose in accessing that private data was to deprive Lazenby of the possibility of securing those individuals as clients. In other words, taking the allegations of the complaint as true — as we must at this stage — Lazenby was an intended victim of the defendants' accessing of private data. Considering all of these circumstances, the very early stage of this case, and the legislature's explicit direction to construe the Georgia RICO Act liberally, see OCGA § 16-14-2 (b), I believe Lazenby's RICO claim is sufficient to withstand the motion to dismiss.